**2522-CC09285**

Electronically Filed - City of St. Louis - September 12, 2025 - 09:52 AM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
22ND JUDICIAL CIRCUIT
STATE OF MISSOURI

| | | |
|---|---|---|
| FANCILLA ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| QUEEN OF PEACE CENTER, | ) | |
| | ) | |
| and | ) | |
| | ) | Cause No. |
| CATHOLIC CHARITIES OF THE | ) | |
| ARCHDIOCESE OF ST. LOUIS, | ) | Division No. |
| | ) | |
| and | ) | |
| | ) | |
| TYRONE FORD, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CHRISTIE BECKER-MARKOVICH, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BLAKE HILDWEIN, | ) | Jury Trial Requested |
| | ) | |
| and | ) | |
| | ) | |
| ROSIE SEILER, | ) | |
| | ) | |
| Defendants. | ) | |

Serve:

Queen of Peace Center
Registered Agent: Sharon Spruell
325 North Newstead Ave.
St. Louis, MO 63108

Serve:

Catholic Charities of the Archdiocese of St. Louis
Registered Agent: Jared Bryson
4445 Lindell Blvd.
St. Louis, MO 63108-2403

1

Electronically Filed - City of St. Louis - September 12, 2025 - 09:52 AM

Serve:

    Tyrone Ford
    6763 Page Ave.
    #201
    St. Louis, MO 63133

Serve:

    Christine Becker-Markovich
    325 North Newstead Ave.
    St. Louis, MO 63108

Serve:

    Rosie Seiler
    325 North Newstead Ave.
    St. Louis, MO 63108

Serve:

    Blake Hilwein
    325 North Newstead Ave.
    St. Louis, MO 63108

## PETITION FOR DAMAGES
### (Under Title VII, 42 U.S.C. §§2000e-2(a)(1) and (2) & §441.233 and §534.020 RSMo)

### INTRODUCTION

COMES NOW plaintiff, Fancilla Adams (hereinafter "plaintiff), by and through her counsel, and brings this cause of action against defendants Queen of Peace Center, (hereinafter "Defendant QOP"), Catholic Charities of the Archdiocese of St. Louis (hereinafter "Defendant Catholic Charities"), Tyrone Ford (hereinafter Defendant "Ford"), Christie Becker-Markovich, (hereinafter Defendant Becker-Markovich, and Rosie Seiler, (hereinafter "Defendant Seiler" and collectively, "defendants").  This action seeks declaratory, injunctive, and equitable relief, actual damages, and costs, and attorneys' fees in accordance with R.S.M.o §105 *et. seq.* and R.S.M.o §213 *et. seq.*, for Defendants' conduct and actions taken against Plaintiff.

Electronically Filed - City of St. Louis - September 12, 2025 - 09:52 AM

## THE PARTIES

1.      At all times mentioned herein, Plaintiff was and is a resident of the State of Missouri and an employee of defendants working for Defendant Queen of Peace Center and Defendant Catholic Charities of the Archdiocese of St. Louis, located in the City of St. Louis, Missouri.

2.      Defendant Queen of Peace Center is a not-for-profit corporation located within the City of St. Louis, State of Missouri, with its principal offices located at 325 N. Newstead Ave, St. Louis, MO 63108. Service upon this defendant is proper pursuant to Missouri Rules of Civil Procedure 54.13 by service upon the Registered Agent. Defendant QOP was plaintiff's employer within the meaning of 42 U.S.C. § 2000e.

3.      Defendant Catholic Charities of the Archdiocese of St. Louis is a not-for-profit corporation located within the City of St. Louis, State of Missouri, with its principal offices located at 4445 Lindell Blvd, St. Louis, MO 63108. Service upon this defendant is proper pursuant to Missouri Rules of Civil Procedure 54.13 by service upon the Registered Agent. Defendant Catholic Charities was plaintiff's employer within the meaning of 42 U.S.C. § 2000e.

4.      At all relevant times herein, Defendant Ford was and is a resident of the State of Missouri and an employer or agent within the meaning of 42 U.S.C. § 2000e in that he was the Chief Operating Officer for Defendant QOP, acting directly in the interest of Defendant QOP and had authority over plaintiff's continued employment, terms and conditions of employment, and employment status.

5.      At all relevant times herein, Defendant Becker-Markovich, a Caucasian female, was and is a resident of the State of Missouri and an employer or agent within the meaning of 42 U.S.C. § 2000e in that she was the Senior Director of Community Outreach for

Electronically Filed - City of St. Louis - September 12, 2025 - 09:52 AM

Defendant QOP, acting directly in the interest of defendant QOP and had authority over plaintiff's continued employment, terms and conditions of employment, and employment status.

6.    At all relevant times herein, Defendant Seiler, a Caucasian female, was and is a resident of the State of Missouri and an employer or agent within the meaning of 42 U.S.C. § 2000e RSMo in that she was a supervisor for Defendant QOP, acting directly in the interest of defendant QOP and had authority over plaintiff's continued employment, terms and conditions of employment, and employment status.

7.    At all relevant times herein, Defendant Hildwein, a Caucasian male, was and is a resident of the State of Missouri and an employer or agent within the meaning of 42 U.S.C. § 2000e RSMo in that he was the Human Resources Director for Defendant QOP, acting directly in the interest of defendant QOP and had authority over plaintiff's continued employment, terms and conditions of employment, and employment status.

<u>VENUE AND JURISDICTION</u>

8.    This action arises under Title VII, 42 U.S.C. §§2000e, et seq., and 42 U.S.C. §1981 and under the laws of the state of Missouri.

9.    Venue is proper in this Court because plaintiff was first injured in the City of St. Louis by the tortious conduct of defendants herein; and Plaintiff resides in the City of St. Louis.

10.    Jurisdiction is invoked pursuant to 42 U.S.C. §§2000e, et seq, as this Petition for Damages is being filed within ninety (90) days of the notice of right to sue letters issued by the Equal Employment Opportunity Commission (EEOC) and the Missouri Commission on Human Rights (MCHR).

Electronically Filed - City of St. Louis - September 12, 2025 - 09:52 AM

11.     Plaintiff, based upon information and belief, indicates that the amount of compensatory and/or special damages in controversy is in excess of $25,000.00; in addition, Plaintiff seeks declaratory, injunctive, and equitable relief, pursuant to 42 U.S.C. §§2000e, et seq.

12.     Costs and attorneys' fees may be awarded pursuant to law and are requested by Plaintiff.

### GENERAL ALLEGATIONS

13.     On or around March 8, 2022 , plaintiff began her employment with Defendant Catholic Charities as a House Manager, and was directly employed by Defendant QOP.

14.     On August 15, 2022, plaintiff began working for QOP at the Our Lady of Perpetual Help facility (hereinafter "OLPH") as a live-in House Manager, at 2011 Linton Ave., St. Louis, MO 63107.

15.     On that same day, Defendant Seiler was demoted from a position as a supervisor for Defendant QOP's Alt-Care program and was transferred to OLPH to serve in a lower-level supervisor position.

16.     From the beginning of her time working for OLPH and reporting to Defendant Seiler, plaintiff was subjected to intimidation, harassment, and discrimination based upon race, and sought to retaliate against plaintiff for making complaints about the discrimination and harassment.

17.     Plaintiff remained in her position with Defendant QOP until October 12, 2023, when she was unlawfully terminated by Defendants.

18.     In truth and fact, plaintiff was discharged in retaliation for filing a discrimination, harassment, and retaliation complaint regarding the actions of Defendant Seiler with Defendant QOP's human resources department and in retaliation after she

Electronically Filed - City of St. Louis - September 12, 2025 - 09:52 AM

vocalized her intent to file a formal complaint with the Equal Opportunity Employment Commission.

19.    Defendant Seiler created a toxic working environment for staff at OLPH from the beginning of her time there as a supervisor.

20.    Defendant Seiler targeted plaintiff and others because of their race and sought to punish plaintiff and other employees based upon her discriminatory intent.

21.    In addition, Defendant Seiler targeted African-American employees while giving preferential treatment to Caucasian employees.

22.    Within the first few weeks of plaintiff's employment at OLPH, Defendant Seiler attempted to submit a fabricated and false disciplinary write-up against plaintiff, alleging that plaintiff had made negative comments about another employee.

23.    In truth and in fact, plaintiff had never made any negative comments about that employee as Seiler alleged; Defendant Seiler knew the allegations were false as she had completely made them up.

24.    Defendant QOP's director of human resources at that time was N'Kiel Love, an African-American male, and he scheduled a meeting with plaintiff, Defendant Seiler, and Defendant Becker-Markovich to discuss the allegations.

25.    After the meeting was completed, Love determined that the accusations against plaintiff were not credible, and he dismissed the "write-up".

26.    Follow this incident, plaintiff and others repeatedly overheard Defendant Seiler make racially discriminatory comments that were about or directed towards African-Americans.

27.    In addition, Defendant Seiler would give personal time off to Caucasian employees when they requested it for personal emergencies, but would deny these same

6

Electronically Filed - City of St. Louis - September 12, 2025 - 09:52 AM

requests for African-American employees.

28.    On September 6, 2023, plaintiff reported to Defendant Seiler and Defendant Becker Markovich, in separate emails, that she had been told by one employee that this employee suspected a different employee had been drinking alcohol on the job.

29.    In addition, plaintiff stated in the emails that she had smelled alcohol in that employee's cup.

30.    Six days later, on September 12, 2023, Defendant Seiler called plaintiff in her office, told her she was receiving a disciplinary write-up, and accused plaintiff of reporting "hearsay" by informing Defendants Seiler and Becker-Markovich that an employee had been drinking on September 6, 2023 and further accused her of "gossiping".

31.    Plaintiff denied that she had been gossiping, stated that several other staff and residents had also observed that the employee had been drinking and that it was another employee who had let plaintiff know another employee was drinking, stated that drinking on the job was against QOP policy, and pointed out that she was required to report this kind of conduct by other staff as it placed the employees and the residents of OLPH in danger.

32.    Despite this, Defendant Seiler proceeded with the disciplinary write-up.

33.    Defendant Seiler had absolutely no factual support for this claim, but targeted plaintiff with a disciplinary write-up for racially discriminatory reasons.

34.    On September 14, 2023, plaintiff was at a meeting with multiple staff present, and one employee asked plaintiff if she was okay and pointed out that plaintiff seemed upset.

35.    Plaintiff informed them that she had received another fabricated write-up from Defendant Seiler and that she had been subjected to harassment and discrimination on

Electronically Filed - City of St. Louis - September 12, 2025 - 09:52 AM

numerous occasions by Defendant Seiler.

36. In response, Plaintiff was encouraged to report the discrimination and harassment to human resources.

37. Following this, Plaintiff left the meeting and proceeded directly to Defendant QOP's HR department and spoke to Kim Marquita, an HR Generalist, and reported the false write-up as well as other examples of discrimination and harassment from Defendant Seiler.

38. After Plaintiff explained everything to Marquita, Marquita told Plaintiff that she believed the write-up was false and targeted and further stated, "I got you girl" and "I know what is going on".

39. After the meeting with HR, Plaintiff went back to her regular meeting and told the employees who were present that she planned to also report Defendant Seiler's discrimination and harassment to the EEOC.

40. Following these instructions, the plaintiff sought to thoroughly investigate the ordinances, rules, and regulations of the City to ensure he would not violate any laws while attempting to comply with Defendant Clemons-Abdullah's directives.

41. The next day, Defendant Seiler was very subdued and would not look at or communicate with Plaintiff.

42. About a week later, the October work schedule was released and included an overnight shift worker. Previous to this, Plaintiff had always been the only employee who remained at OLPH overnight.

43. On October 6, 2023, Plaintiff reported to the local EEOC office and filed an initial informational form. Plaintiff was told she would be contacted by an investigator so she could prepare and file a formal charge of discrimination and harassment.

8

Electronically Filed - City of St. Louis - September 12, 2025 - 09:52 AM

44.     Six days later, on October 12, 2023, Defendant Ford, along with two security guards and the new HR Director for Defendant QOP, Blake Hildwein ("Hildwein"), showed up unannounced at Plaintiff's bedroom door at OLPH and notified Plaintiff that her employment had been terminated, effective immediately.

45.     In addition, Hildwein and Ford handed plaintiff a piece of paper, demanded that Plaintiff sign the paper without reading it, and Hildwein also told her "We have a $1000 check for you".

46.     Plaintiff asked why she was being terminated, and was Hildwein told her "misconduct".  He then told her she had to sign the paper and take the check and that she had fifteen minutes to gather her things and leave the premises.

47.     Plaintiff then asked again for more time to read the document and she was denied by Defendants Hildwein and Ford.  She also told them she needed more time to gather all of her things; however, she was denied again, and they told her they had already called her an Uber.

48.     After security and Defendants Ford and Hildwein walked plaintiff out of the building, Hildwein again told plaintiff to sign the document and take the check for $1000; however, plaintiff refused to sign the document or take the check.

49.     As a result of Defendants' actions, Plaintiff was left without a residence.

50.     The document that Hildwein and Ford demanded plaintiff sign was a full release of liability for Defendants in exchange for a $1000 severance payment.

51.     Prior to her termination, Plaintiff received no form of discipline, other than the two fabricated retaliatory write-ups given to Plaintiff by Defendant Seiler.

52.     The actions of Defendants were done with reckless disregard and/or evil motive with regard to Plaintiff's rights under the law.  Defendants' actions were willful,

Electronically Filed - City of St. Louis - September 12, 2025 - 09:52 AM

wanton, malicious, and done with conscious disregard of plaintiff's rights and the rights of others.

53.    As a result of Defendants' retaliatory termination and discrimination, Plaintiff has suffered damages in the form of emotional distress and lost wages.

### COUNT I – VIOLATION OF THE CIVIL RIGHTS ACT OF 1964
### (42 U.S.C.§§2000e *et seq.,* as amended ("Title VII"))

54.    Plaintiff restates and realleges each and every allegation as set forth in paragraphs 1 through 52 and incorporates same herein by reference.

55.    Throughout Plaintiff's tenure with Defendant Queen of Peace, Defendants and their agents engaged in unlawful discriminatory practices towards Plaintiff and subjected plaintiff to a hostile work environment.

56.    Defendants discharged Plaintiff and otherwise discriminated against her with respect to her compensation, terms, conditions, and privileges of her employment, because of her race and because she reported Defendant Seiler's discriminatory conduct and informed Defendant QOP that she intended to file a formal charge with the EEOC.

57.    On February 16, 2024, plaintiff filed a timely charge of discrimination and retaliation with the Missouri Commission on Human Rights ("MCHR") alleging that Defendants discriminated against her because of her race, and Defendants had terminated her employment in retaliation after she complained about the discrimination and harassment.

58.    Due to the work-sharing agreement between the MCHR and the Equal Employment Opportunity Commission (EEOC), the investigation into the charges of discrimination and retaliation was assigned to the EEOC.

Electronically Filed - City of St. Louis - September 12, 2025 - 09:52 AM

59.    On June 17, 2025, the EEOC issued plaintiff a right-to-sue letter and on May 23, 2025 the MCHR issued its Notice of Right to Sue, under the Missouri Human Rights Act, Chapter 213 *et seq.*, as amended ("MHRA") and Title VII, 42 U.S.C. §§2000e-2(a)(1) and (2).

60.    Plaintiff has met all of the procedural prerequisites for the bringing of this cause of action for racial discrimination and retaliation.

61.    Plaintiff's race and her complaint of racial discrimination and harassment was a motivating factor in defendants' decision to terminate plaintiff.

62.    As a proximate result of defendants' conduct, plaintiff has lost, and will continue to lose, compensation and benefits of employment, including but not limited to the loss of income and benefits; and has, and will continue to, suffer emotional pain, humiliation, embarrassment, mental anguish, and loss of enjoyment of life.

63.    Defendants' actions were intentional, willful, wanton, malicious and/or outrageous because of their evil motive and/or reckless indifference to the rights of plaintiff under the MHRA, ADEA, and Title VII, entitling plaintiff to punitive damages.

64.    As a proximate result of defendants' conduct, plaintiff does not have an adequate remedy at law and is entitled to equitable relief, including a permanent injunction, declaratory judgment, reinstatement and/or front pay.

65.    As a proximate result of defendants' conduct, plaintiff has incurred and will continue to incur reasonable attorneys' fees and costs in the prosecution of her discrimination and retaliation claims.

WHEREFORE, plaintiff respectfully prays this Court to enter judgment in favor of plaintiff and against defendants, to include the following:

11

Electronically Filed - City of St. Louis - September 12, 2025 - 09:52 AM

A.    To declare that the rights of plaintiff under Title VII have been violated by the acts and practices of defendants, as alleged hereinabove;

B.    To permanently enjoin defendants, their officers, subordinates, agents, employees, successors and assigns and all persons acting in concert or participating with defendants from engaging in any employment practice which discriminates against persons because of their national origin, in violation of the MHRA, including plaintiff;

C.    To award plaintiff compensatory damages in the amount of all wages and other benefits lost as a result of defendants' unlawful acts, together with pre-judgment and post-judgment interest;

D.    To award plaintiff such sums sufficient to compensate her for her emotional pain, suffering, mental anguish, inconvenience, embarrassment, and loss of esteem;

E.    To award plaintiff her reasonable attorney's fees and expenses incurred in the prosecution of this petition, as provided by law, together with her costs and expenses herein incurred; and

F.    For such other and further relief as this Court deems just and equitable in the premises and as necessary to effectuate the terms of the judgment.

## COUNT II -- §1981

66.    Plaintiff hereby incorporates by reference each and every allegation set forth hereinabove in paragraphs 1 through 66 as if set forth in full herein.

67.    Defendants harassed, created a hostile work environment and unlawfully discharged plaintiff as set forth above.

Electronically Filed - City of St. Louis - September 12, 2025 - 09:52 AM

68.    Defendants thereby discriminated against plaintiff *because of* her race; and/or would not have done so *but for* her race.

WHEREFORE, plaintiff respectfully prays this Court to enter judgment in favor of plaintiff and against defendants, to include the following:

A.    To declare that the rights of plaintiff under the equal protection clause of the 14th Amendment to the U.S. Constitution and under §1981 have been violated by the acts and practices of defendants as alleged hereinabove;

B.    To permanently enjoin the City and defendants, their officers, subordinates, agents, employees, successors and assigns and all persons acting in concert or participating with them, from engaging in any employment practice which discriminates against persons because of their race, including plaintiff;

C.    To order defendants to reinstate and provide back pay to plaintiff, retroactive to the date of her wrongful discharge; or in lieu of reinstatement, to award plaintiff reasonable front pay;

D.    To award plaintiff compensatory damages in the amount of all wages and fringe benefits lost as a result of defendants' unlawful acts, together with pre-judgment and post-judgment interest;

E.    To award plaintiff such sums sufficient to compensate her for her emotional pain, suffering, mental anguish, inconvenience, embarrassment and loss of esteem;

F.    To award plaintiff such sums as permitted by law as and for punitive damages;

G.    To award plaintiff her reasonable attorney=s fees and expenses incurred in the prosecution of this petition, as provided by law, together with his costs

Electronically Filed - City of St. Louis - September 12, 2025 - 09:52 AM

and expenses herein incurred; and

H.      For such other and further relief as this Court deems just and equitable in the premises and as necessary to effectuate the terms of the judgment.

<u>COUNT III -- FORCIBLE ENTRY AND DETAINER</u>

69.     Plaintiff hereby incorporates by reference each and every allegation set forth hereinabove in paragraphs 1 through 68 as if set forth in full herein.

70.     On the 15th day of August, 2022, plaintiff was lawfully possessed of her residence inside the premises located at 2011 Linton Avenue, St. Louis, Missouri 63107.

71.     A landlord-tenant relationship existed between plaintiff and defendant Queen of Peace Center, when, on the 12th day of October 2023, employees of defendant Queen of Peace Center, acting within the scope and course of their employment with defendant, entered into possession upon the plaintiff's foregoing residence, and forcibly detained the possession thereof and, by use of force, threat and intimidation, unilaterally removed and excluded plaintiff (defendant's tenant), and put her out-of-doors, and further had plaintiff's personal property removed from the premises; and then wrongfully detained and held the same -- all without judicial process and court order in violation of §441.233 and §534.020, RSMo.,

72.     Plaintiff has sustained damages, by reason of the forcible entry and detainer of the aforesaid, for the monthly rents and profits of said tenement, which is approximately $10,065.00 to date, and may incur additional sums in the future; and for her general damages.

WHEREFORE, plaintiff prays of judgment of restitution, and for her damages, and for the value of the monthly rents and profits of the premises aforesaid; and for such other and further relief that the Court may deem meet and proper under the circumstances.

Electronically Filed - City of St. Louis - September 12, 2025 - 09:52 AM

Respectfully submitted,

UTHOFF, GRAEBER, BOBINETTE & BLANKE

By:    /s/ Paul L. Schmitz
         Paul L. Schmitz, MBE #66885
         Richard Blanke, MBE #28675
         906 Olive Street, Suite 300
         St. Louis, Missouri 63101
         Telephone: (314) 621-9550
         Facsimile: (314) 621-2697
         Email: pschmitz@ugbblaw.com
         Email: rblanke@ugbblaw.com
         *Attorneys for Plaintiff Fancilla Adams*